## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| **v.** | : **No. 1:21-cr-00289-RDM-01** |
| | : |
| **PHILIP C. Vogel, II,** | : |
| **et al.** | : |

## DEFENDANT'S REDACTED MEMORANDUM IN AID OF SENTENCING

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Defendant Philp C. Vogel, II. There can be no dispute that the Court has a duty to deliver a sentence that is not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. Vogel requests the Court to impose a sentence which properly reflects a (final) determination of the Advisory Sentencing Guidelines, as well as the other 18 U.S.C. §3553(a)(1-7) factors, including

(1)     His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event;

(2)     His immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity, and his sincere remorse; and

(3)     To avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

Furthermore, the Court should take into consideration a variance downward of at least 1 level from the final U.S.S.G. base offense level. This request is based on the extraordinary detrimental impact of the COVID-19 pandemic on incarcerated individuals withing the Federal Bureau of Prisons.

And, as discussed herein-below, the should Court consider a downward criminal history category departure from IV to III, pursuant to U.S.S. G. § 4A1.3(b)(1).

Respectfully, Mr. Vogel asks the Court to impose a sentence of, essentially, a ("Zone A") sentence of 0 months imprisonment including a period of 4 months of home detention, (with work-release privileges) and 150 hours of community service, and restitution of $1,806.00. ($1,306.00 should be joint and several with co-defendant Debra J. Maimone)

## I.   Case Background

On March 12, 2021, a sealed Complaint [1] was filed, charging:

- Theft of Property    $1,000.00 or Less, in violation of 18 U.S.C. §§ 641.

- Entering or Remaining in a Restricted Building or Grounds, 18 in violation of U.S.C. § 1752(a)(1).

- Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2).

- Disorderly Conduct in a Capitol Building) in violation of 40 U.S.C. § 5401(e)(2)(D).

- Parading, Demonstrating or Picketing in a Capitol Building,  in violation of 40 U.S.C. § 5401(e)(2)(G).

Mr. Vogel was arrested on March 19, 2021, in Western District of PA.  He was presented in this Court on March 26, 2021.

On April 7, 2021, an Information [14] was filed, charging:

- Count One: Aiding & Abetting Theft of Property  $1,000.00 or Less, in violation of 18 U.S.C. §§ 641 and 2.

- Count 2:  Entering or Remaining in a Restricted Building or Grounds, 18 in violation of U.S.C. § 1752(a)(1).

- Count 3: Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2).

- Count 4:  Disorderly Conduct in a Capitol Building) in violation of 40 U.S.C. § 5401(e)(2)(D).

- Count 5: (Parading, Demonstrating or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5401(e)(2)(G).

On June 2, 2023, the Court accepted Mr. Vogel's plea to Count One of the Information.(Aiding & Abetting Theft of Property  $1,000.00 or Less, in violation of 18 U.S.C. §§ 641 and 2) The remaining Counts are expected to be dismissed at the sentencing hearing.

A sentencing hearing is scheduled for August 25, 2023, at 9:30 a.m. (VTC)

The U.S. Probation Office is recommending 3 months imprisonment, 12 months supervised release, and restitution of $1,806.00. ($1,306.00 should be joint and several with co-defendant Debra J. Maimone)

The government is requesting 5 months imprisonment, 12 months supervised release, 60 hours of community service, and restitution of $1,806.00. ($1,306.00 should be joint and several with co-defendant Debra J. Maimone)

Mr. Vogel and counsel have received and reviewed the Presentence Report, both the draft and final versions. ("PSR")

Based on an offense level of 4 and a criminal history category IV, the advisory sentencing guidelines range is 2-8 months imprisonment. However, this range is in Zone B of the Sentencing Table which advises,

> "the minimum term may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment or a sentence of probation that includes a condition or combination of home detention for imprisonment according to the scheduled in subsection (e). U.S.S.G. § 5C1.1(d).

## II.  The Assigned Criminal History Category Substantially Over-Represents the Seriousness of the Defendant's Criminal History

Mr. Vogel  has some criminal history and he is assigned 7 criminal history points, resulting in criminal history category IV. (*See* PSR, ¶69). As more fully discussed herein, Mr. Vogel is requesting a downward departure (from IV to III) of his criminal history category pursuant to U.S.S.G. § 4A1.(b)(1)   "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history . . . a downward departure may be warranted."

The 3 noted criminal convictions comprising the 7 criminal history category points are for convictions occurring in 2009, (age 21), and two convictions in 2012 (age 24)    some 12-14 years ago. (*See* PSR ¶ ¶ 65, 66, & 67)) Although these convictions

and sentence (imprisonment exceeding 1 year) are counted [1] because the instant case conduct occurred on January 6, 2021, it is nevertheless submitted that due to the age of these three convictions the "blanket" assignment of 7 criminal history points should lead this Court to consider a one-level criminal history category downward departure to criminal history category III. ████████████████

████████████████████████████████████████

████████████████████████████. ██████████

████████████████████████████████

████████████████████████████████████

████ .

Accordingly, Mr. Vogel submits, pursuant to U.S.S.G. § 4A1.3(b)(1), a downward criminal history category departure is warranted. Consequently, this Court should conclude that the criminal history category should lowered to criminal history category III. If such occurs, then the corresponding range of imprisonment is 0-6 months. ("Zone A")

### III   Other Objections to the Pre-Sentence Investigation Report [69]

Paragraph No. 73-74:  Mr. Vogel reports that the charges noted were *nolled* at the request of the alleged victim.

Paragraph No. 102:   ████████████████████████

████████████████████████████

████████████████████████

████████████████████████

---

[1]     *See* U.S.S.G. § 4A1.2(e)(1)    " Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted."

### V.  Legal Standard   The Post-Booker Sentencing Framework And The Guidelines Are Not Mandatory

As it knows, the Court has broad discretion to consider nearly every aspect of a particular case, and a particular defendant, in fashioning an appropriate sentence. In early 2005, the United States Supreme Court declared that the Guidelines are advisory, rather than mandatory. *United States v. Booker* 543 U.S.220, 125 S.Ct. 738, 160 L. Ed 2d 621 (2005). Although the Court must consider the Guidelines in imposing a reasonable sentence, the Guidelines are now merely "advisory," constituting just one factor to be considered on equal footing with the other sentencing factors found in 18 U.S.C. §3553 (a). *See id.* at 757,764   67, 790.

The *Booker* Court also re-emphasized that the primary sentencing mandate of §3553 (a) is that courts must impose the least amount of imprisonment and sentence necessary to achieve the statutory purposes of punishment-justice, deterrence, incapacitation, and rehabilitation; the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in (18 U.S.C. §3553(a)(2). 18 U.S.C. §3553(a).[2] This represents a cap above which the Court is

---

[2]   18 U.S.C. §3553 (a) states, in pertinent part, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with purposes set forth in paragraph (2) of this subsection.  The court, in determining the particular sentence to be imposed, shall consider    (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."Furthermore, paragraph (3) of this subsection directs the Court to consider "the kinds of sentences available."

*statutorily prohibited* from sentencing - even when a far greater sentence is recommended by the advisory sentencing guidelines. *See, United States v. Denarli*, 892 F.2d 2698, 276-77 (3rd Cir. 1989)(Becker, J., concurring in part, dissenting in part). In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court held that the sentencing guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. §3553 (a). In two more recent summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009). Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a). Moreover, as the Supreme Court reiterated, in imposing sentence, "the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 131 S. Ct. 1229, 1240 (Mar. 2, 2011).

### VI.   Nature and Circumstances of the Offense and History and Characteristics of Mr. Vogel

The Court must consider the specific history and character of the defendant and the specific circumstances and seriousness of the offense and impose no more of a sentence than is necessary to promote respect for the law, provide just punishment and treatment, afford adequate deterrence, protect the public, allow restitution to

victims, and avoid unwarranted inconsistency among similarly situated defendants. 18 U.S.C. § 3553(a). The Court is no longer limited in the factors it may consider, and may consider any factors it believes relevant to tailoring an individualized and appropriate sentence.[3]

The personal characteristics, including personal and family data, physical condition, mental and emotional health, substance abuse, education, employment and financial history of Mr. Vogel also encourage the sentencing proposal herein. These factors are discussed more fully in the PSR, ¶¶ 77-121.

A.   **Nature and Circumstances Of The Offense**

Mr. Vogel, who lives in Monessen, PA, traveled on January 5, 2021, on January 5, 2021, with his co-defendant (Debra J. Maimone) to Washington, D.C. He believed he should show his support for the soon to be former President by attending the rally on the Ellipse scheduled for the morning of January 6, 2021. Importantly, Mr. Vogel was fixated on the *process,* not the result of the election. The emphasis on the process, and not the result, is particularly important because it shows that Mr. Vogel values the Constitution and the foundation of our government.

---

[3]

Under 18 U.S.C. §3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth.

While at the Ellipse on January 6th he did not ever think he was going to the U.S. Capitol grounds, let alone inside the Capitol Building. Not until Mr. Trump's speech did he have any intention of going anywhere other than the Ellipse area. As the day unfolded, he never planned or envisioned entering the U.S. Capitol Building. That is, not until Mr. Trump invited everyone to march to the U.S. Capitol. Mr. Vogel followed the large crowd there that day with no intention of doing anything but having his voice join those of thousands of other peaceful protestors. Now, after seeing what really happened that day by watching film on numerous platforms, Mr. Vogel regrets that he was a part of it, albeit a small part of it compared to the many violent protesters who assaulted police officers and caused damage to the U.S. Capitol building and grounds. To be clear, Mr. Vogel did not come to Washington, D.C. with the intention of subverting democracy. He to our Nation's Capital to peacefully protest what he believed at that time to be a fraudulent election.

After leaving the Ellipse area he joined the protest at the U.S. Capitol Building and, at approximately 2:26 p.m., he entered inside the Building through the Senate Wing doors. The walked through the Crypt area in the basement. Then he went to the second floor and walked towards the Rotunda area. Then he walked up to third floor and down a corridor toward the Senate Gallery. In that area, he (and his co-defendant) each picked up a gas mask which belonged to the U.S. Capitol Police. Then he entered into the Senate Gallery where Mr. Vogel took a black duffel bag from under a seat in the Gallery. There were two emergency escape hoods in the duffel bag. Then,

at 2:46 he left the Senate Gallery and walked down the hallway. At approximately
2:50 p.m. he (and Ms. Maimone) exited the U.S. Capitol Building.

After watching video clips of January 6th after-the-fact, he regrets that he was
any part of it of the events, including any interactions with police officer(s). Mr. Vogel
was not part of a group which either organized activities on January 6th, nor does he
subscribe to any far-right political views. He had no idea where he was while he was
in the Capitol building, he was only inside the building for less than one-half hour,
and to this day could not navigate the building.

Mr. Vogel recalls that while he was briefly inside the Capitol building, the mood
was like other protests in Washington, D.C.   which he had previously seen on TV.
People were taking selfies, and for the most part, appeared to be peacefully taking
photos, waiving flags, and walking throughout the area. After watching video clips of
January 6th after-the-fact, Mr. Vogel regrets that he was any part of it and he is
extremely remorseful. He did not  join the violent protesters who assaulted police
officers and caused property damage to the U.S. Capitol.

His actions within the U.S. Capitol Building have been tracked on the CCTV
footage and this demonstrates that he was unlawfully present inside the Building
with no excuse. He did not destroy property. Furthermore, Mr. Vogel did not exercise
managerial authority over any other participant and, thus, he was average or minor
participant.

**B.**   <u>**Post-January 6, 2021**</u>

To his credit, Mr. Vogel has fully acknowledged his misconduct and he has expressed his remorse throughout the pendency of this case. (He has submitted a letter (8/19/2023) with this Memorandum which further demonstrates his sincere remorse.) He pled guilty at the earliest opportunity in the proceedings thus saving valuable judicial resources, as well as the resources of the U.S. Attorney's Office.

It is noted "During the pre-sentence interview, the defendant agreed with the conduct described in the Statement of Offense as presented to the Court prior to his guilty plea." *See* PSR ¶52. During an interview with AUSA Wagner on August 15, 2023, Mr. Vogel, was not only candid about his actions on January 6th, but he also expressed his sincere remorse for his personal conduct on January 6, 2021. And Mr. Vogel submits with this Memorandum his letter to the Court which further demonstrates his remorse for his conduct, as well as the consequences of his behavior on January 6th.

Mr. Vogel has endured life-long damage to his reputation. He reports he has been the subject of a number of media accounts lumping him with others that were there on January 6, 2021. None of this will be erased from the internet    it may be there forever. His personal character is forever besmirched, and his family will also suffer since they are inextricably intertwined with him.

**C.**   <u>**Personal History**</u>

Mr. Vogel (age 35) was born in November, 1987. His father died in 2022 and his mother is still alive. He was raised by both parents. His father was in the U.S.

Military, so when he was young they resided in Germany for a few years. Thereafter he lived in Houston, Pennsylvania with his mother. He enjoys a good relationship with his younger brother who lives nearby to Mr. Vogel. He also has two half-brother with whom he has good relationships. Mr. Vogel's up-bringing was marred by a custody battle between his parents and by a difficult relationship with his father.  He periodically lived with his aunt and uncle. As a teenager and as a young adult, he has resided in several locations including Pennsylvania and Florida. ████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

He has a daughter, age 9, with whom he shares custody & care with the child's mother. He financially supports his daughter in any way he can and without a formal child support order in place.

In 2017 he met Debra Maimone, who is his co-defendant and fiancé. They live together and plan to marry in the future. Mr. Vogel's daughter occasionally stays with them.

Mr. Vogel has not achieved his high school diploma or GED. And he does not have any professional licenses or technical certifications.

According to the PSR, he does not has the ability to pay a fine in this matter. (PSR ¶ 121) and, therefore, the Court is asked to waive any fine.

Submitted the Court are letters (or e-mails) in support of Mr. Vogel. Each letter provides a unique perspective of Mr. Vogel.  All speak to his excellent reputation as a family man, a terrific father to his daughter, and as a good and caring friend to all.

1. Alberta Rose Zekir (Mother)

2. Dana Kosek (Mother of Mr. Vogel's Daughter)

3. Vera Vogel (Daughter)

4. Lane Zekir (Step-Brother)

5. Miriam Boso (Friend)

6. Robert Mary (Cousin / Friend)

7. Paul C. Shook (Uncle)

8. Leonard W. Boso (Friend)

9. Robin L. Shook (Aunt)

10. Robert Lee Knollinger (Brother-In-Law)

11. Robert A. Maimone (Father of Debra J. Maimone)

12. Basil Maimone (Grandfather of Debra J. Maimone)

13. Greg Wood (Friend)

14. Christian P. Vogel (Brother)

## VII.   Respect for the Law and Deterrence

Mr. Vogel appeared in a timely manner for all court proceedings. His personal history and characteristics as described throughout this memorandum, as well as

noted in "support letters,"  it is improbable that he will participate in dishonest, reprehensible or criminal activities in the future. There are numerous reasons to be optimistic that Mr. Vogel will not engage in further criminal behavior, including the support of his large family & friends, he is 35 years old and determined to be a productive and responsible member of society, the promise that others have seen in him, as well as his own expected statements to this Court at the sentencing hearing about the hope he has for his future. A prison sentence would have no greater effect toward the goals of sentencing than a period of probation as proposed herein.

### VIII.  The Need to Avoid Unwarranted Sentencing Disparities, and Impose A Sentence That Reflects The Seriousness of the Offense

There is no dispute that Mr. Vogel's criminal convictions are serious and will likely have irreparable unintended consequences. Any prison term would nonetheless be an inappropriate sentence for Mr. Vogel. And, the Court should not impose a sentence which would result in an unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Counsel has surveyed other January 6th cases / sentences and notes two similar January 6th defendants who committed factually similar behavior:

- Robert Petrosh, 1:21-CR-00347-TNM

Mr. Petrosh entered into the U.S. Capitol Building and remained inside for approximately 30 minutes. He stole two microphones from a lectern that was the property of Nancy Pelosi. *See* Statement of Offense [33] at 4. Each microphone cost $219.00 for a combined amount of $438.00 Id. Mr. Petrosh later texted a friend, "Got

your souvenir… Microphone from congress hall." Id. Mr. Petrosh was sentenced to 10 days' incarceration, 12 months' supervised release, $1,000.00 fine, and $938.00 restitution.

- William Merry, 1:21-CR-00748-JEB

Mr. Merry entered into the U.S. Capitol Building at approximately 2:20 p.m. where he witnessed a person smash a sign against a wall. *See* Statement of Offense [36] at 4. Mr. Merry picked-up a piece of the broken sign that had the words "The House" and "Nancy." Id. Mr. Merry later held up the piece for the crowd to witness and someone else recorded this action. Id. at 5. He left the Building at approximately 2:55 p.m. He continued to display the piece of the broken sign to others. Mr. Merry was sentenced to 45 days' incarceration, 9 months' supervised release, $500.00 restitution and 80 hours' community and service.

Although somewhat similar as to January 6th conduct of Mr. Vogel, the active jail time sentences imposed on both defendants Petrosh & Merry are far less than the recommendations made by the government (5 months) and by the U.S. Probation Office (3 months) as to Mr. Vogel. Furthermore, the two cases cited by the government in its Sentencing Memorandum [74, at 24-25] suggest a sentence far less than the government's sentencing recommendation (5 months) for Mr. Vogel.[4]

---

[4]     *USA v. Jason Riddle*, 21-cr-305-DLF (90 days imprisonment) and *USA v. Neil Ashcroft*, 21-cr-296-CKK. (80 days imprisonment)

**IX.**     **Sentencing in the COVID-19 Era**

Pursuant to the 18 U.S.C. §3553 (a) sentencing factors, the Court needs to consider the impact of the COVID-19 pandemic on incarcerated individuals and, on this basis, grant Mr. Vogel' request for a variant sentence    a deduction of one level from the final USSG base offense level. During the past three years, COVID-19 has rampaged through the BOP facilities, causing extraordinary fear among the inmates and resulting in "lock-down" type conditions. And, with the imposition of a sentence in this case, he faces reporting to the BOP where most institutions continue to be operating under modified lock-down status because of the pandemic.

Because of COVID-19, the unusually harsher "prison" conditions, including lengthy "lock-downs," will unjustly, add to the appropriate sentence/punishment for Mr. Vogel in this case. The mental strain and stress from the fear of becoming infected and possibly suffering severe consequences is a new risk while incarcerated and a deterrent to being locked-up again in the future. Not having the control to maintain proper social distancing and exercise proper hygiene to reduce the risks of contracting the virus were real factors for those persons incarcerated within the BOP.

Presently, it is counsel's understanding many of the BOP facilities remain on a "modified operations" status because of COVID-19. As such, if Mr. Vogel is remanded to the custody of the BOP he may well experience harsher confinement conditions because of the consequences of the pandemic.

Under the 3553(a)(2)(A) factor of imposing just punishment the court should consider the BOP "modified operations" status. Family and friends are prohibited or

-16-

otherwise restricted from visiting. (And, frankly, it may not be medically or otherwise appropriate for Mr. Vogel's young son to visit him at a BOP facility) Programming, absent select UNICOR operations, is restricted and movement throughout certain detention facilities are also restricted or may be suspended. Mr. Vogel will be subjected to modified BOP operations, including the distinct possibility of being prohibited from seeing loved ones and unable to engage in rehabilitative or productive programming. CDC guidance, such as social distancing, is simply impossible to achieve in our federal prisons     particularly during pandemic related lock-downs. Incarcerated individuals share bathrooms, sinks, showers, and telephones. They eat together, and sleep in close proximity to each other. They lack the freedom to bathe regularly and, essentially  are unable to effectively disinfect their surroundings. Unsurprisingly, during the past 3 + years approximately 1/3 of all BOP tested positive for the COVID-19 virus and at least 315 inmates and 7 BOP staff have died.[5]

Accordingly, the Court should acknowledge the deleterious impact the pandemic has created on confinement conditions during the past 3+ years and fashion an appropriate variant sentence taking into account that COVID-19 remains viable and dangerous within the U.S. Prison System, as acknowledged by the ongoing restricted / modified operations within the BOP.

---

[5]   https://www.bop.gov/about/statistics/statistics inmate covid19.jsp    last accessed on August 5, 2023)

### XI.   The Kinds of Sentences Available
### and the Defendant's Sentencing Proposal

According to the PSR, Mr. Vogel faces a Sentencing Guidelines-recommended term of imprisonment in the range of 2-8 months. *See* PSR, § 123. And Mr. Vogel has, herein, challenged the criminal history category IV, requesting category III. However, this range is in Zone B of the Sentencing Table which advises,

> "the minimum term may be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment or a sentence of probation that includes a condition or combination of home detention for imprisonment according to the scheduled in subsection (e). U.S.S.G. § 5C1.1(d).

Of course, the Supreme Court has ruled that the punishment guidelines set out by the Commission are entirely advisory, so that range of punishment is simply one factor to be considered.[10] Congressional enactment, as opposed to the administrative guidelines from the Sentencing Commission. Undersigned counsel is unaware of anything that might warrant a sentence greater than the most severe punishment advised by the advisory guidelines by the Sentencing Commission, it is respectfully submitted that a sentence of, essentially, a ("Zone A") sentence of 0 months imprisonment including a period of 4 months of home detention, (with work-release privileges) and 150 hours of community service will be "sufficient, but not greater than necessary," as for Mr. Vogel.

-18-

In choosing between those two extremes, this Court is required to consider other factors set out in 18 U.S.C. § 3553 (a). Of course, the Court need not march through a rote parroting of those factors, and counsel need not drag the Court through such a recitation. The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence and incapacitation.

Here, Mr. Vogel has already been punished in numerous ways, some of which will continue throughout the remainder of his life. He now has a federal conviction as a 35 year old, which will impact future opportunities including his ability to go to good jobs. His actions have placed him on the news in every living room, not only in his home city in Pennsylvania, but in the entire country, with many having lumped him together with right wing extremists. The extensive information that is on the internet about him will surely follow him for the rest of his life.

As to specific deterrence, Mr. Vogel's likelihood of recidivism is low. His proclivity to commit future crimes just does not exist. A punishment of significant prison time in this case (as recommended in the PSR and by the government) would have the exact opposite effect from what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

Undersigned counsel respectfully submits that a sentence below the guideline range is "sufficient, but not greater than necessary, to comply with" the purposes of punishment. Any term of active incarceration will impose a serious deprivation of his liberty and reflects the seriousness of the offense, promotes respect for the law and

provides a just punishment    i.e., a punishment that "fits the crime"    and it also affords adequate deterrence to other similarly situated persons who may be tempted to take the same course of action as Mr. Vogel. And the sentence proposed herein will "protect the public from further crimes of  Mr. Vogel.

## **CONCLUSION**

District Courts have been tasked with crafting sentences that best serve the interests of justice in each individual case. Considering the arguments set forth herein Mr. Vogel respectfully asks this Court to use its discretion to fashion a sentence which takes into account the unique circumstances of Mr. Vogel's conduct and personal history, on January 6, 2021, to avoid any sentencing disparities, and the harsh on-going pandemic conditions expected withing the BOP. As discussed herein the Court should consider and assign a downward variance at least one level from the final U.S.S.G base offense.

Furthermore, Mr. Vogel has had ample time to reflect on his mistakes, and he is deeply regretful. He should not be considered a future risk to the community and he has been sufficiently deterred from committing future crimes. Mr. Vogel is fundamentally a good family person, and there is nothing to suggest that he will be anything other than that moving forward in his life.

At the sentencing hearing, Mr. Vogel may publicly express his remorse and that he recognizes that he will have to live for the rest of his life with the harsh consequences of these felony convictions, both personally and in his pursuit of gainful employment.

Mr. Vogel is ready and willing to comply with all terms of any sentence imposed. He understands and recognizes that even the slightest violation of a sentencing condition may result in another period of federal imprisonment. The prolonged loss of his liberty, including the devastating and irreparable consequences to his family, is more than enough incentive for him to respect and comply with all aspects of any sentence imposed.[6]

As presented herein, the 18 U.S.C. §3553 (a) sentencing factors, (a sentence should be "sufficient but not greater than necessary") to comply with sentencing goals, the Plea Agreement, including the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, as well as the concerns of the court and the community, will be satisfied by proposed sentence herein.

Respectfully, Mr. Vogel asks the Court to impose a sentence consisting of, essentially, a ("Zone A") sentence of 0 months imprisonment including a period of 4 months of home detention, (with work-release privileges) and 150 hours of community service hours and restitution of $1,806.00. ($1,306.00 should be joint and several with co-defendant Debra J. Maimone) Such a sentence does nothing to undermine the deterrent effect of sentencing. Neither does such a sentence undermine the statutory need for the Court to underscore, for Mr. Vogel and for the community, the

---

[6]

Furthermore, there is a remarkable cost savings to the taxpayers of the United States if the Court imposes a shorter, rather than a longer term of incarceration. As noted in the PSR, (¶147) the monthly cost of imprisonment is $3,688.00, $2,980.00 for community confinement, and $371.00 monthly for supervision.

seriousness of the offense for which he is being sentenced. As proposed herein, the sentence appropriately provides just punishment and respect for the law, so that he may continue to be with his family, and continue to live a productive and law-biding life. To do otherwise would be manifestly unjust and a miscarriage of justice.

Finally, if a period of incarceration is imposed, Mr. Vogel is asking the Court for the following recommendations:

1.      A judicial recommendation to the Federal Bureau of Prisons for immediate placement into a Community Confinement Center. ("Half-Way House") This type of designation will, potentially, allow Mr. Vogel "work-release" privileges.

2.      A judicial recommendation to the Federal Bureau of Prisons any designation to be within the Pittsburgh, PA, geographic area. Such a designation will allow his immediate family and children to visit with him without undue financial or logistical hardship,

3.      If the Court imposes a term of imprisonment for Mr. Vogel and for his co-defendant Ms. Maimone, then it is respectfully requested that the Court "stagger" reporting dates so that either Mr. Vogel or Ms. Mamoine may continue to operate Ms. Maimone's cleaning / restoration business without total (and devastating) disruption which will occur if both were incarcerated at the same time.

4.      A judicial recommendation to the Federal Bureau of Prisons that Mr. Vogel participate in the following programs: Federal Prisons Industries Program and the Occupational Industries Program.

███  ████████████████████████████████

████████████████████████████████████

Respectfully submitted,

THE ORENBERG LAW FIRM, P.C.

Allen H. Orenberg, Bar No. 395519
12505 Park Potomac Avenue, 6th Floor
Potomac, Maryland 20854
Telephone:   (301) 984-8005
Fax:             (301) 984-8008
Cell-Phone:  (301) 807-3847
aorenberg@orenberglaw.com
Counsel to Philip C. Vogel, II

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 19, 2023, I caused a copy of the foregoing

Redacted  Defendant's Memorandum in Aid of Sentencing, with Exhibits to be served

by CM/ECF to case registered parties.

Allen H. Orenberg